UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KSI CAPITAL CORP.,

            Plaintiff,           CASE NO. 07-12501

v.                                  HON. MARIANNE O. BATTANI

RICARDO PAGAN,

            Defendant.

_____/


**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. #8). Plaintiff requests the Court to enter a monetary judgment against Defendant in connection with Defendant's guarantee of a defaulted loan.

This Court granted Plaintiff's earlier motion for partial summary judgment, finding that Defendant was liable to the Plaintiff for the repayment of the debt under the terms of the guaranty, as well as for the reimbursement of reasonable counsel fees incurred in connection with the collection of the debt. For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Federal Rule of Civil Procedure 56(e) provides that the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Thus, to create a genuine issue of material fact, the nonmovant must present sufficient evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita, 475 U.S. at 587).

## III. STATEMENT OF FACTS

In July of 2006, Plaintiff KSI Capital and Northeast Commercial Services Corporation executed a Loan Agreement and Promissory Note, under which Northeast was extended a $4,000,000 loan for the purchase of a Detroit property (the "Book Tower"). The loan was secured by a Mortgage and an Assignment of Leases. Defendant Ricardo Pagan, acting as president of Northeast, further executed a Guaranty on the loan, whereby Defendant "absolutely, irrevocably and unconditionally guaranties to Lender the full, prompt and unconditional payment of the Debt."

According to the uncontradicted affidavit of the president of Plaintiff presented in the prior motion, Northeast began to fall behind in payments in November 2006 and ceased payment altogether in March 2007. In April 2007, Plaintiff declared Northeast and Defendant to be in default under the Note, the Mortgage and the Guaranty. Plaintiff sued Defendant in this Court for breach of contract on June 11, 2007. Defendant's response to Plaintiff's complaint consisted of blanket denials and non-answers. Plaintiff moved for summary judgment as to Defendant's liability under the Guaranty, and Defendant did not respond to the motion. The Court found Defendant liable for the repayment of the debt and the reimbursement of reasonable counsel fees incurred in connection with the collection of the debt under the terms of the Guaranty.

On August 30, 2007, Plaintiff held a sheriff's sale for the property, and Plaintiff won the bidding with a bid of approximately $4.2 million. According to Plaintiff's uncontested affidavit, this was $100,000 less than the amount owed under the Note. Plaintiff has subsequently sold the property, and Defendant alleges that Plaintiff made a profit in excess of $1.3 million.

Plaintiff has moved for summary judgment with regard to damages owed under the Guaranty. Plaintiff seeks a judgment in the amount of $444,508, representing (1) the portion of

the loan that was deficient after the foreclosure sale ($109,741 including interest), (2) the attorney's fees and costs in connection with repossessing the building and collecting the debt ($119,827), (3) back taxes on the property ($78,672), and (4) the utilities ($58,595), insurance ($65,375), and assorted maintenance costs ($129,152) incurred in running the building from August 2007 until the end of the statutory redemption period in February 2008, minus rent received from tenants (- $116,854).

Defendant has responded to Plaintiff's motion with the argument that (1) Defendant should not be required to pay the difference between what was owed under the loan and what the foreclosure sale brought, because the "fair market value" of the building was higher that the amount owed under the loan; (2) Defendant should not have to pay the various expenses accrued after the foreclosure sale, including taxes, utilities and various maintenance; and (3) Defendant should not have to pay the assorted expenses because they have not been presented in detailed form.[1]

IV.     ANALYSIS

A.  Fair Market Value

According to Plaintiff's uncontested affidavit, the property sold at the foreclosure sale (to Plaintiff) for $4,225,278.09, which is $100,000 less than what Northeast owed Plaintiff under the terms of the mortgage. Plaintiff claims that Defendant owes Plaintiff this deficiency, and as established in the Court's prior opinion, under the clear terms of the Guaranty, Defendant owes the amount due under the mortgage, less the foreclosure sale price of the property.

---

[1] Plaintiff, in its reply, submitted detailed receipts of its expenses, making this objection moot.

Defendant argues that under New Jersey law (the governing law according to the Guaranty), the fair market value of a foreclosed property is to be deducted from the total amount owed under the mortgage "to prevent a windfall or where circumstances require equitable relief in the interests of justice."  See, e.g., Citibank v. Errico, 597 A.2d 1091, 1097 (N.J. Super. Ct. App. Div. 1991).  Defendant's only evidence supporting his allegation that the building sold for less than fair market value is the subsequent resale of the property by Plaintiff, allegedly for more than what they paid for it at the foreclosure sale.[2]

This contention is irrelevant, however, as Plaintiff is contractually bound to accept the foreclosure sale price according to the terms of the Guaranty, which explicitly waived Defendant's "fair market value" defense.  The Guaranty expressly states that "the amount of the debt may be reduced only by the price for which that collateral is sold at a foreclosure sale, even if the collateral is worth more than the sale price."  (Def. Exh. B. ¶ 4(t)(i)).  Though Defendant claims that this provision is unconscionable, Defendant cites to no law holding such a term unconscionable, and courts in this district have allowed such provisions in guarantee agreements. See Crown Life Ins. Co. v. Hicks, 1994 U.S. Dist. LEXIS 5562, *12 (E.D. Mich. 1994) (holding that where guarantors waived the ability to raise a defense of an inadequate purchase price, the waiver is "valid and enforceable").  The Court sees no reason to rule such a bargained-for term unconscionable.

Finally, even if the Court needed to examine whether fair market value had been offered

---

[2] Defendant reaches this conclusion by noting that the subsequent purchaser of the property executed a mortgage in the amount of $5.5 million on the property.  The Court does not need to reach the question of whether this is proof of the property's fair market value, but notes that if it did, this evidence would insufficient to establish such value.

for the property, which it does not, it is clear that Defendant's purchase price – established by making a bid at a public foreclosure sale and representing nearly the entire value of the mortgage – is not so outrageous that "circumstances require equitable relief in the interests of justice." Citibank, 597 A.2d at 1097. Thus, the Court finds that Defendant is liable for the $109,741 deficiency under the Guaranty.

### B. Expenses After The Foreclosure Sale

Plaintiff further seeks damages associated with the foreclosure, sale and subsequent operation of the mortgaged building.

#### 1) Attorney's Fees

The Guaranty obligates Defendant to compensate Plaintiff for the attorney's fees expended in connection with the default and foreclosure, and "in connection with the collection of the Debt or any portion thereof, including any expenses incurred in any post-judgment proceedings to collect and enforce such judgment." (Pl. Exh. A at ¶ 2(b)).

According to Plaintiff's affidavit, these legal expenses are for work performed in relation to (1) this suit, (2) Northeast's bankruptcy and its impact on the foreclosure sale, (3) a suit against Plaintiff over Northeast's unpaid utility bills, and (4) a suit regarding a party in the previous suit and his claims against the property's title. Defendant calls these claims "preposterous" and argues that because several of these suits occurred after the foreclosure sale he cannot be liable, but he does not otherwise challenge the sum.

The timing of the suits in relation to the foreclosure sale has nothing to do with Defendant's obligation under the Guaranty. By committing to pay counsel's fees "in connection

with the collection of the Debt," including those fees "incurred in *post-judgment* proceedings," Defendant is bound to reimburse Plaintiff for any and all expenses related to the collection of the debt owed by Northeast to Plaintiff. The uncontested evidence establishes that these suits are related to the collection of the debt, as they all arose from Northeast's default on the loan.

Therefore, the Court finds that the attorney's fees in the amount of $119,827 are properly owed to Plaintiff under the terms of the Guaranty.

*2) Taxes*

Next, Plaintiff submits uncontested receipts for property taxes paid in the sum of $78,672 on the property in question. The receipts establish that though the taxes were paid in 2008, they represent tax that was incurred in the years 2006 and 2007. Defendant claims that guarantors cannot be held liable for taxes that accrue after the foreclosure sale. See Bank of Three Oaks v. Lakefront Properties, 444 N.W.2d 217, 219 (Mich. App. 1989).

However, under the terms of the Mortgage, Northeast was responsible for the taxes paid on the building while it was the owner of the property. (See Pl. Exh. D, Section 2.5). Because the taxes accrued *during* Northeast's period of ownership – not after – these tax payments are properly understood as outstanding obligations of Northeast. Defendant is therefore responsible for them under the terms of the Guaranty.

Thus, the Court finds that Defendant is obligated to plaintiff for $78,672 in back taxes on the property.

### 3) Operating Expenses

Finally, Plaintiff seeks compensation for insurance, maintenance, security, water, and power bills during the period after they purchased the property at the foreclosure sale but before the expiration of the statutory redemption period. Defendant objects, arguing that these expenses are properly Plaintiff's, as Plaintiff owned the building after the foreclosure sale. The Court agrees that these requests constitute overreaching on the part of Plaintiff.

Upon the sale of a foreclosed property at a foreclosure sale, there is a six-month statutory redemption period during which the mortgagor may pay the sale price (plus expenses) and reacquire the property. MICH. COMP. LAW § 600.3240(2). *If* a mortgagor were to reacquire a property, *then* they would owe the purchaser any insurance payments and other necessary expenses that the purchaser incurred during their time of ownership. MICH. COMP. LAW § 600.3240(4). Plaintiff appears to rely on this provision in demanding payment of their various operating expenses dating from after they purchased the property at the foreclosure sale. This is misguided.

"The Legislature has expressly required a mortgagor to pay for such items if the mortgagor exercises its right of redemption." Bank of Three Oaks, 444 N.W.2d at 219. "However, no such statutory requirement exists when ... the mortgagor opts not to redeem the premises." Id.

The operating expenses of the building rest rightfully with the valid owner of the building – in this case, Plaintiff. There is no term in the mortgage, nor in any statute relating to foreclosure, that would require Defendant to continue paying the operating expenses of the building even after it had been sold to another party. It is immaterial that the party to whom the property was sold and the party holding the mortgage are one and the same. Under MICH. COMP.

Law § 600.3240, the ownership of the building changed hands at the foreclosure sale and any liability for the operating costs is properly on Plaintiff, the new owner.

Therefore, the Court finds that the Plaintiff is not obligated to compensation under the Guaranty for the utilities, insurance, and assorted maintenance costs during the post-foreclosure period, and this claim is denied.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment. The uncontested evidence presented establishes that the Defendant is liable to the Plaintiff in the amount of $308,240, representing (1) the deficiency on the loan after the foreclosure sale, (2) the attorney's fees accrued in connection with repossessing the building after default and seeking collection of the debt, and (3) the back taxes owed for the building during Defendant's period of ownership.

Plaintiff is to submit a judgment consistent with this opinion within ten (10) days of the entry of this opinion.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: July 25, 2008

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt<br>DEPUTY CLERK